**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHOICE HOTELS INTERNATIONAL, INC., | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | |
| v. | Civil Action |
| | No. 1:22-cv-4779 (KMW-AMD) |
| AMBA CORPORATION *et al.*, | |
| Defendants. | **OPINION** |

**Robert M. Ford, Esquire**
BIRDSALL & LAUGHLIN, LLC
1720 Highway 34 North
Wall, NJ 07719

*Counsel for Plaintiff Choice Hotels International, Inc.*

**James Thomas McCarthy, Esquire**
MCCARTHY & SORIERO LLC
11 S. Finley Avenue
Basking Ridge, NJ 07920

*Counsel for Defendants AMBA Corporation and Kamlesh Patel*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

Plaintiff Choice Hotels International, LLC ("Plaintiff") brings this action against Defendants AMBA Corporation and Kamlesh Patel (collectively, "Defendants") for trademark infringement and unfair competition in violation of the Lanham Act, as well as for related statutory and common law claims under New Jersey law. Defendants are former franchisees that operated an ECONO LODGE® brand hotel pursuant to a Franchise Agreement from 2003 to 2021. Plaintiff alleges that Defendants continued to use its marks after termination of the Agreement and seeks permanent injunctive relief and monetary damages.

Discovery is complete, and Plaintiff now moves for summary judgment under Federal Rule of Civil Procedure 56. The Court has considered the parties' written submissions, finds oral

argument unnecessary, and decides the motion on the papers. For the reasons set forth below, Plaintiff's motion is GRANTED.

## II.    BACKGROUND

The facts of this case are straightforward. Plaintiff is a lodging franchisor with more than 7,100 franchised hotels worldwide. (ECF No. 108-4 at ¶ 1.[1]) On December 4, 2003, Defendants entered into a Franchise Agreement ("Agreement") with Plaintiff authorizing them to operate an ECONO LODGE® brand hotel and use the ECONO LODGE® Family of Marks[2] in connection with the hotel at 301 S Black Horse Pike, Bellmawr, NJ 08031 (hereinafter "the Subject Property"). (*Id.* ¶ 5; ECF No 1 ¶ 22; ECF No 108-16 p. 2.[3]) Plaintiff alleges that in September 2020 Defendants defaulted on their payment obligations under the Agreement. (ECF No. 180-4. at ¶ 6). On January 6, 2021, Plaintiff terminated the Agreement and issued a Notice of Termination directing Defendants to cease and desist use of the ECONO LODGE® Family of Marks. (*Id.* at ¶ 7-8).

Plaintiff alleges that after termination Defendants continued to use the ECONO LODGE® Family of Marks. (*Id.* at ¶ 9.) Prior to filing this action, Plaintiff sent Defendants two separate notices of infringement instructing them to cease and desist their unauthorized use. (*See Id.* at ¶¶ 10-16.) Defendants continued to display the marks on exterior and interior signage, to use the marks in advertising and marketing materials, and to orally identify the Subject Property to the public as "Econo Lodge." (ECF No. 108-9; ECF No. 108-11; ECF No. 108-12.[4]) Thereafter, Plaintiff filed this suit asserting federal and state claims for trademark infringement and unfair

---

[1] Pl.'s Statement of Undisputed Material Facts ("SMF") (ECF No. 108-4.)
[2] The ECONO LODGE® Family of Marks includes the following: '642 Registration, '518 Registration, '530 Registration, '688 Registration, '065 Registration, '067 Registration, and '199 Registration.
[3] Compl. (ECF No. 1 at ¶ 22); Franchise Agreement (ECF No. 108-16 at p. 2.)
[4] *See* Pl. Notice of Infringement Letter to Defendants (ECF No. 108-9); Declaration of Gabriel Wilmes and Investigative Report (ECF No. 108-11); Declaration of Dean Smith and Investigative Report (ECF No. 108-12.)

competition. (*See* ECF No. 1.[5])

The procedural background of this case, however, is a little less than straight forward. Plaintiff commenced this action on July 27, 2022 (ECF No. 1.) Defendants did not initially appear and on October 22, 2022, Plaintiff requested and obtained a Clerk's entry of default (ECF No. 8.[6]) Subsequently, on January 31, 2023, Plaintiff filed a Motion for Default Judgment (ECF No. 10.[7]) Defendants appeared the next day. (ECF No. 12.[8])

The case was, at one point, administratively terminated (ECF No. 24[9]) to allow for settlement discussions, which ultimately failed. The Court then reopened the case, set aside the Clerk's Entry of Default, and directed Defendants to Answer the Complaint. (ECF No. 27.[10]) On August 18, 2023, shortly after the Defendant filed its Answer, Plaintiff filed a Motion for Preliminary Injunction (ECF No. 30[11]), which Defendants did not oppose (*see* ECF No. 35[12]), and the Court granted. (ECF No. 42.[13])

Plaintiff later moved for contempt of the preliminary injunction, alleging that two months after the Order issued, Defendants still continued to infringe on Plaintiff's marks. (ECF No. 48 at ¶ 11.[14]) Defendants did not file opposition papers in response to Plaintiff's Contempt Motion. Instead, Defendants' counsel submitted a "Certification in Opposition" explaining that he could not respond to Plaintiff's Motion because Defendants were nonresponsive despite repeated

---

[5] Compl. (ECF No. 1.)
[6] Request for Default by Choice Hotels International, Inc. (ECF No. 8.)
[7] Motion for Default Judgment as to AMBA Corp. and Kamlesh Patel by All Plaintiffs. (ECF No. 10.)
[8] Notice of Appearance by Kenneth L. Leiby, Jr on behalf of AMBA (ECF No. 12.)
[9] Order Administratively Terminating Action – 60 Day, Pending Consummation of Settlement (ECF No. 24.)
[10] Order Granting Plaintiff's Motion to Reopen Case; Setting Aside the Clerk's entry of default as to Defendants AMBA Corporation and Kamlesh Patel; Directing Defendants to file an answer to the complaint. (ECF No. 27.)
[11] Motion for Preliminary Injunction by All Plaintiffs (ECF No. 30.)
[12] Letter from Kenneth L Leiby Jr. Esq stating that the letter was submitted "to confirm that Defendants have not opposed Plaintiff's motion for a preliminary injunction." (ECF No. 35.)
[13] Order Granting Plaintiff's Motion for Preliminary Injunction. (ECF No. 42.)
[14] *See* Motion to hold Defendants AMBA Corporation and Kamlesh Patel In Contempt re Order on Motion for Preliminary Injunction, by All Plaintiffs (ECF No. 48 at ¶11.)

attempts to communicate with them. (*See* ECF No. 55.[15]) Counsel's Certification indicated that, as a result of Defendants' failure to communicate, he had submitted a Motion to Withdraw.[16] (ECF No. 54.[17])

Thereafter, the Court granted Plaintiff's Contempt Motion finding that Defendants had not complied with the preliminary injunction. (ECF No. 69.[18]) The Court's Contempt and Seizure Order imposed a daily coercive penalty and directed the U.S. Marshals Service to seize and impound all items at the Subject Property bearing any of the ECONO LODGE® Family of Marks. (*See Id.*) Pursuant to the Order, the U.S. Marshals removed exterior signage, interior signage, and paraphernalia that bore the marks. (ECF No. 108-4 at ¶ 23.)

For the next eleven months the parties continued litigating issues specifically related to Defendants' compliance with the injunction. On March 27, 2025, seventeen months after the injunction issued, the Court entered an Order stating that Defendants were finally in compliance, though the precise date of compliance could not be determined. (*See* ECF No. 105.[19]). Immediately thereafter Plaintiff filed this Motion for Summary Judgment (ECF No. 106), which Defendants opposed (ECF No. 108).[20]

## III. STANDARD OF REVIEW

---

[15] Certification in Opposition filed by AMBA Corporation, Kamlesh Patel re Motion to hold Defendants AMBA and Kamlesh Patel In Contempt (ECF No. 55.)

[16] Counsel later withdrew his Motion to Withdraw as Attorney. However, three months after that motion was withdrawn, Defendants' counsel submitted a second Motion to Withdraw (ECF No. 85), this time citing Defendant's failure to pay its legal fees as its justification. Three months after that counsel was substituted, which necessitated reopening and extending the discovery period.

[17] *See* Motion to Withdraw as Attorney for Defendants by AMBA Corporation and Kamlesh Patel (ECF No. 54).

[18] *See* Contempt and Seizure Order (ECF No. 69.)

[19] *See* Memorandum Opinion and Order Denying Plaintiff's Motion to Hold Defendants in Contempt (ECF No. 105).

[20] Plaintiff did not file a reply to Defendants' Opposition.

**Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.    DISCUSSION

Plaintiff moves for summary judgment on liability for all five claims, as well as for its entitlement to the relief sought, and a judgment awarding monetary damages. Regarding the requested relief, Plaintiff seeks a permanent injunction, disgorgement of Defendants' profits, compensation for Plaintiff's damages, which it argues should be trebled, costs of the action, and an award of attorney's fees based on an exceptional case designation. Finally, Plaintiff sets forth a monetary damages calculation and requests the Court adopt it.[21]

### 1.    Federal Trademark Infringement and Unfair Competition

Infringement of a federally registered trademark is governed by the Lanham Act. To establish a claim of trademark infringement under the Act, a plaintiff must "demonstrate that 1) it has a valid and legally protectable mark; 2) it owns the mark; and 3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

Plaintiff also brings a claim under Section 43(a) of the Lanham Act for Federal Unfair Competition – False Designation of Origin. 15 U.S.C. § 1125(a). Courts measure both trademark infringement and unfair competition under the Lanham Act by "identical standards." *A&H Sportswear* 237 F.3d at 210; *See also Prime Hookah Inc. v. FCM Online LLC*, No. 2:21-cv-13915 (WJM), 2022 U.S. Dist. LEXIS 69544, at *5 (D.N.J. Apr. 14, 2022); *Checkpoint Sys. v. Check Point Software Techs. Inc.*, 269 F.3d 270, 279-80 (3d Cir. 2001); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472-73 (3d Cir. 1994); *Chanel, Inc. v. Gordashevsky*, 558 F.

---

[21] The Court notes that Defendants' Opposition does not substantively oppose Plaintiff's motion for summary judgment as to liability for any of Plaintiff's claims and, it explicitly, does not oppose a permanent injunction. Instead, Defendants oppose Plaintiff's request for monetary relief, the damages calculation Plaintiff sets forth, and Plaintiff's assertion that the Court should award attorney's fees based on an exceptional case designation under the Lanham Act.

Supp. 2d 532, 536 (D.N.J. 2008). As such, the Court need not engage in a separate analysis of the federal trademark infringement and unfair competition claims and will analyze both claims together.

A certificate of registration of a mark that was issued by the United States Patent and Trademark Office is considered "prime facie evidence of the validity of the registered mark and…the owner's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1057(b). Further, when a mark is incontestable under the Act "registration shall be conclusive evidence of the validity of the registered mark…and of the registrant's ownership of the mark and…exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). As such, the first two elements of trademark infringement are satisfied when "the mark was federally registered and has become 'incontestable' under the Lanham Act." *Fisons* 30 F.3d at 472.

As to the third element, the likelihood of confusion exists when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Id.* (citing *Dranoff–Perlstein Assoc. v. Sklar,* 967 F.2d 852, 862 (3d Cir.1992)). That said, proof of actual confusion is not required to establish the third element. *Id.* The Third Circuit has found that a "great likelihood of confusion exists when the infringer uses the exact trademark," *United States Jaycees v. Phila. Jaycees,* 639 F.2d 134, 142 (3d Cir. 1981), as is the case when a hold-over franchisee continues to use the franchisor's marks. *See Burger King Corp. v. Mason,* 710 F.2d 1480, 1492 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks… Because of this risk, many courts have held that continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement").

In this case, Plaintiff provides certificates of registration issued by the U.S. Patent and Trademark Office for each of the trademarks associated with the ECONO LODGE® Family of Marks. (ECF No. 108-6).[22] It is undisputed that these marks are incontestable under the Act.[23] (ECF No. 108-4 at ¶4; ECF No. 111 at ¶4.[24]) As such, Plaintiff has established the first and second elements of Trademark Infringement under the Lanham Act. Defendants are terminated franchisees that continued to use Plaintiff's exact marks. This satisfies the third element of trademark infringement. Therefore, the Court grants Plaintiff's motion for summary judgment as to Claims I and II.

### 2. New Jersey Trade Infringement and Unfair Competition

Plaintiff also asserted New Jersey statutory and common law claims of trademark infringement and unfair competition. The Lanham Act is "derived generally and purposefully from the common law tort of unfair competition, and its language parallels the protections afforded by state common law and statutory torts...the Act federalizes a common law tort." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994). Given this, Courts have found that "the elements for a claim for trademark infringement under the Lanham Act are the same as the elements...for claims of trademark infringement and unfair competition under New Jersey statutory and common law." *J & J Snack Foods Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002). *See also Prime Hookah* 2022 U.S. Dist. LEXIS 69544, at *7; *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 340 (D.N.J. 2001). Thus, the Court will extend its analysis of the federal claims to Plaintiff's state claims. Therefore, the Court grants Plaintiff's

---

[22] Pl.'s MSJ Br. Ex. 1 (ECF No. 108-6.)

[23] While the Defendants' Response to the Statement of Undisputed Material Facts does not admit this fact, it also does not dispute it. No where in its papers do Defendants dispute the validity of the ECONO LODGE® Family of Marks or its incontestable status. Thus, the Court has deemed this fact admitted.

[24] *Compare* Pl.'s SMF at ¶4 (ECF No. 108-4) *with* Def.'s Response to Plaintiff's Statement of Facts ("RSUMF") at ¶ 4 (ECF No. 111.)

motion for summary judgment as to Claims III, IV, and V.

### 3. Requested Relief

Plaintiff seeks both injunctive and monetary relief. (ECF No. 108-1 at pp.118-25.[25]) Plaintiff requests a permanent injunction enjoining Defendants from using the ECONO LODGE® Family of Marks as well as all monetary relief available under the Lanham Act. *Id.* The Court will first address Plaintiff's request for a permanent injunction and then proceed to monetary damages.

### a. Permanent Injunction

First, the Court notes that, Defendants explicitly do not oppose the grant of a permanent injunction. (ECF No. 111 at 7.[26])

A permanent injunction may issue when the movant demonstrates that 1) it has suffered irreparable damage, 2) the remedies available at law are inadequate, 3) an equitable remedy is warranted when considering the balance of hardships between the plaintiff and the defendant, and 4) the public interest is not disserved by the issuance of a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Lanham Act specifically authorizes the grant of injunctions and provides that "a plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation." 15 U.S.C. § 1116(a).

Since the Court has found that Defendants have violated the relevant section of the Act with regard to trademark infringement and unfair competition, Plaintiff is entitled to a presumption of irreparable harm, which Defendants do not rebut. In balancing the hardships between Plaintiff and Defendants, the Court finds that the Plaintiff's interest in maintaining ownership, control, and the integrity of its marks outweighs the Defendant's interest in using such marks unauthorized. There is no public interest served in permitting an infringer to continue unauthorized use of

---

[25] *See* Pl.'s Br. Motion for Summary Judgment (ECF No. 108-1 at pp. 118-25.)
[26] *See* Def.'s Opp. at p. 7 (ECF No. 111.)

intellectual property. Conversely, the public interest is served by protecting the intellectual property rights of legitimate owners. *Prime Hookah* 2022 U.S. Dist. LEXIS 69544, at *9. Thus, the public interest is not disserved by issuing an injunction.

As all four factors weigh in favor of Plaintiff the Court grants the Plaintiff's request for a permanent injunction.

### b. Monetary Damages

Under the Lanham Act, a successful plaintiff may recover 1) defendant's profits, 2) plaintiff's damages, and 3) the costs of the action. 15 U.S.C. § 1117(a). It is the Court's responsibility to assess the profits and damages or to order such an assessment to be supervised by the Court. *Id*. In the course of such assessment, the plaintiff is only required to prove defendant's sales, whereas the defendant must prove "all elements of costs or deduction claimed." *Id*.

### i. Disgorgement of Defendants' Profits

As the Lanham Act provides for multiple remedies, and monetary damages are available "subject to the principles of equity," disgorgement of profits does not follow as a matter of course once a plaintiff has established infringement. *Kars 4 Kids Inc. v. Am. Can!,* 8 F.4th 209, 223 (3d Cir. 2021). Instead, the Court must apply a six-factor test to balance the equities of the parties and determine whether disgorgement is appropriate. *Id*. (citing *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005)). The balancing factors include: "(1) whether the [infringer] had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Id*. The Court finds that all six factors weigh in favor of the Plaintiff and thus the Court grants Plaintiff's motion for summary judgment entitling it to a disgorgement of Defendants' profits.

### 1)    Intent to Confuse or Deceive

Knowing or willful infringement exists when there is either "an intent to infringe or a deliberate disregard of a mark holder's rights." *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999); *See also W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 662 (2d Cir. 1970)(holding that intentional infringement occurs when "[defendant's] actions and contentions are surrounded by an aura of indifference to plaintiff's rights and a smug willingness to determine unilaterally that the good will plaintiff had sought to foster could safely be treated as a nullity. These elements amount to a species of bad faith and wrongful intent. Defendant, deliberately and unnecessarily duplicating plaintiff's mark, acted in a way that was calculated to appropriate or otherwise benefit from the good will plaintiff had nurtured.") Infringement of this nature is indicative of the infringer's intent.

In this case, Defendants' rights to use Plaintiff's marks ceased upon termination of the Agreement on January 6, 2021. In the termination notice Defendants were advised that they must cease and desist use of the ECONO LODGE® Family of Marks. However, upon investigation, Plaintiffs discovered that Defendants continued to use its marks unauthorized. Despite having been directed to cease and desist use of Plaintiff's marks in March 2022 and again in May 2022, Defendants continued to use Plaintiff's marks, which prompted Plaintiff to file the instant suit in July 2022. It wasn't until after issuance of a preliminary injunction, followed by a Seizure and Contempt Order, which resulted in the U.S. Marshals seizing all infringing signage and paraphernalia, and Plaintiff filing additional subsequent Motions for Contempt that Plaintiff finally confirmed on March 27, 2025, that Defendants were no longer infringing on Plaintiff's marks.

This series of events clearly demonstrates that Defendants knowingly and continuously showed a deliberate disregard for Plaintiff's rights, acting in a way that was calculated to benefit

from the good will Plaintiff had nurtured. Thus, this factor weighs in favor of Plaintiff.

### 2) Diverted Sales

Next, the Court must determine "whether there have been any diversion of the plaintiff's sales due to the infringing mark." *Sabinsa Corp. v. Creative Compounds, LLC*, No. CIV.A. 04-4239 DMC, 2011 WL 3236096, at *3 (D.N.J. July 27, 2011). Plaintiff is only entitled to recover the portion of Defendants' profits that can be "demonstrably attributable to the unlawful use of [its] mark." *Id.* (citing *Mishawaka Rubber & Woolen Mfg. v. S.S. Kresge Co.,* 316 U.S. 203, 206, (1942).) Diversion of sales can be shown by evidence of instances of actual confusion. *Banjo Buddies*, 399 F.3d at 175-76. However, failure to produce evidence of actual confusion will not *per se* defeat an assessing of profits. *Sabinsa Corp.*, 2011 WL 3236096, at *3. (citing *Banjo Buddies*, 399 F.3d at 175-76). Additionally, even when the plaintiff does not show evidence of actual confusion, a successful claim of infringement leads to a rebuttable presumption of diversion of sales in favor of plaintiff. *Id* at *4.

Here, Plaintiff has provided no evidence of actual confusion. However, Plaintiff successfully established trademark infringement, entitling it to a presumption of diverted sales. Moreover, Defendants have provided no substantive argument to rebut the presumption of diverted sales. The only rebuttal that can be construed in Defendants' Opposition is Defendants' claim that Plaintiff has "not shown…that the defendant's alleged infringement was 'material in that it is likely to influence purchasing decisions." (ECF No. 111 at p. 9.) However, Defendants do not expound on this claim. Instead, they make a blanket statement quoting caselaw that, as explained further below, is inapplicable to the facts and issues in this case. This is not sufficient to successfully overcome Plaintiff's presumption of diverted sales. Therefore, this factor weighs in Plaintiff's favor.

### 3) Adequacy of Other Remedies

The Lanham Act authorizes both equitable and monetary forms of relief. *See* 15 U.S.C. § 1116, 1117. Plaintiff has fully availed itself of the equitable relief provided under the Act but contends that equitable remedies are not sufficient to compensate it for Defendants' infringement. Thus, Plaintiff argues, it is entitled to monetary damages. Defendants do not rebut this assertion. However, the Supreme Court has indicated that in cases where Defendants attempt to comply with cease-and-desist orders, and where there is no showing of fraud or palming off, equitable remedies are sufficient. *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 132 (1947). In this case, Defendants did not even attempt to comply with multiple cease and desist orders from Plaintiff and from the Court. Further, even after the U.S. Marshals effectuated a seizure warrant, Defendants continued to use Plaintiff's marks in their online advertising. Given the circumstances of this case, this factor weighs in favor of Plaintiff.

### 4) Plaintiff's Unreasonable Delay

Nothing indicates that Plaintiff delayed asserting its rights. Plaintiff made several attempts to resolve this matter prior to litigation but was ultimately forced to file this suit. Plaintiff has timely litigated at each stage of the process. Any delay in the adjudication of this case has come at the efforts of Defendants. As such, this factor weighs in favor of Plaintiff.

### 5) Public Interest

While trademark law was developed to protect trademark owners, it was also crafted to protect the public. *Sabinsa*, 2011 WL 3236069 at *6. As such, the Court must consider whether the public interest is served by making Defendants conduct unprofitable. *Id.* There is a public interest in discouraging infringers from "interfere[ing] with the consumer's ability to make informed purchasing decisions." *Banjo Buddies*, 399 F.3d at 176.

In this case, Defendants are holdover franchisees who continued, without authorization, to use Plaintiff's exact marks not only in physical signage and branding merchandise, but also in marketing and advertising, and direct representation to the public by referring to themselves as "Econo Lodge" in conversations. This obviously creates confusion and interferes with the public's ability to make informed purchasing decisions. This factor weighs in favor of Plaintiff.

### 6)     Palming Off

"Palming off" occurs when an alleged infringer "misrepresents [their] own goods or services as someone else's." *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 28 n.1, (2003). Palming off necessarily requires that the alleged infringer engage in conduct with a culpable intent. *Sabinsa*, 2011 3236096 at *7. In this case, Defendants wholly represented to the public that Defendants' services were provided under the umbrella of Choice Hotel's ECONO LODGE® services despite knowing that it was not authorized to do so. In doing so, Defendants misrepresented their own services as Plaintiff's services. Here, Defendants' conduct represented a clear case of palming off. Therefore, this factor weighs in favor of Plaintiff.

As all factors weigh in favor of Plaintiff, the Court orders a disgorgement of Defendants' profits.

### ii.  Damages Suffered by the Plaintiff

In addition to disgorgement of profits, the Lanham Act provides that the successful plaintiff may recover its actual monetary damages. 15 U.S.C. § 1117(a). The Court also has discretion to order damages in excess of the actual damages "not exceeding three times such amount." *Id.* When a Defendant is liable for continued use of a trademark after termination of authorization, courts have determined that damages may be based on the amount of royalties or monthly fees that a plaintiff would have been entitled to during the period of infringement. *Super 8 Motels, Inc. v.*

14

*Amba LLC*, No. CIV.A. 05-2767 (JCL), 2006 WL 3041084, at *7 (D.N.J. Oct. 26, 2006) (relying on *A & H Sportswear Co.*, 166 F.3d at 208.)

Defendants argue first that, based on *Warner-Lambert, Inc.*, 204 F.3d 87, 91 (3d Cir. 2000), Plaintiff has not established its right to recover damages. Defendants then argue that Plaintiff's damages calculation cannot be adopted because the Franchise Agreement does not clearly establish the percentage used to calculate monthly fees. The Court addresses these arguments in turn.

### 1) Defendants' Reliance on *Warner-Lambert*

Defendants' reliance on *Warner-Lambert* is misplaced. In their opposition, Defendants rely on *Warner-Lambert* for the proposition that it establishes the elements a plaintiff must satisfy when seeking damages under the Lanham Act. (ECF No. 111 at p. 8.)

However, a fair reading of *Warner-Lambert* reveals that the Court stated: "To establish a Lanham Act *claim* based on false or misleading representation of a product the plaintiff must show..." *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d at 91. (emphasis added). It is beyond cavil that the elements necessary to establish a claim differ from those required to establish damages. The *Warner-Lambert* Court addressed the threshold requirements for liability—not the evidentiary showing necessary to recover monetary relief. *Id.* Moreover, the plaintiff in *Warner-Lambert* sought only injunctive relief. *Id.* at 90. Nothing in the opinion indicates that monetary damages were at issue. *See Id.* Accordingly, Defendants misapply *Warner-Lambert* by importing the elements of liability into their analysis of Plaintiff's entitlement to monetary damages.

Further, *Warner-Lambert* is distinguishable from this case. The claim at issue in *Warner-Lambert* concerned false or misleading representations revolving around allegations of false advertising.[27] Here, by contrast, the claims involve trademark infringement and unfair competition

---

[27] The *Warner-Lambert* Court stated in full: "To establish a Lanham Act claim *based on a false or misleading representation of a product* the plaintiff must show: 1) that the defendant has made false or misleading statements as

arising from a holdover franchisee's continued use of Plaintiff's marks despite their knowledge that use was no longer authorized. It is axiomatic that the elements required to establish one type of Lanham Act violation are not necessarily identical to those to establish another.[28] Suffice it to say, the elements of the false advertising claim in *Warner-Lambert* are distinct from those governing the trademark infringement and unfair competition claims in this case, which is also distinct from the requirements to establish Plaintiff's entitlement to damages.

### 2) Monthly Fee Based Damages

Plaintiff calculated its damages based on the Monthly Fee Rate ("Monthly Fees") established in the Franchise Agreement. According to Plaintiff, pursuant to the Agreement, Defendants were obligated to pay 7.5% of the preceding month's gross room revenues each month. (ECF No. 108-1 at p. 22.) Defendants dispute this calculation, arguing that "The Franchise Agreement speaks to increases in the Marketing/Reservations Fee, which is part of the alleged 7.5% gross room fee, but there is no evidence how much that increase was, or if it ever happened." (ECF No. 111, at p. 3 ¶ 35.[29])

Under Section 4(b) of the Franchise Agreement, which is titled "Fees and Reports", the Monthly Fees included "(1) A monthly Royalty Fee of 4% of the preceding month's Gross Room Revenues" and "(2) A monthly Marketing/Reservations Fee of 3.5% of the preceding month's Gross Room Revenues. [Plaintiff] may increase the Marketing/Reservation Fee for increases in inflation or costs of advertising, publicity, public relations or marketing and for increases in [Plaintiff's] cost of providing the reservation system so long as the increases apply to all or most

---

to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Warner-Lambert* 204 F.3d at 91-92.

[28] The Court has already undertaken an element-by-element analysis of the claims asserted here, *see supra* Part IV.A-B, but will not reiterate that discussion.

[29] Def.'s RSUMF at p. 3 ¶ 35 (ECF No. 111).

of the U.S. hotels in the System unless we get your approval to a greater amount." (ECF No. 108-16 at p. 2.[30])

Defendants correctly assert that Plaintiff has not provided any evidence regarding whether, or to what extent, the Marketing/Reservations Fee has ever been increased during the life of the Agreement.[31] This creates a factual dispute regarding the monthly fee used to calculate Plaintiff's damages. The question, then, is whether this dispute is material to the damages calculation. "A fact is material if—taken as true—it would affect the outcome of the case under governing law." *Susquehanna Twp. Sch. Dist.*, 969 F.3d at 125. Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

Therefore, the relevant inquiry for the damages calculation in this case, is whether the Plaintiff's discretion to increase the monthly fee percentage creates a factual dispute that could affect the outcome of the case. Specifically, the Court must determine whether a reasonable jury could return a verdict adverse to the Plaintiff's damages calculation. Here, because any variability in the monthly fees could only increase the monthly fee rate, and thus increase the Plaintiff's potential damages award, no reasonable jury could find in a manner that would decrease the monthly percentage used to calculate Plaintiff's damages.[32]

Accordingly, the Court finds that there is no genuine dispute of material fact regarding the

---

[30] Franchise Agreement (ECF No. 108-16 at p. 2.)
[31] Defendants do not contend that any such increase actually occurred at any point throughout the almost twenty years the Agreement was in effect.
[32] The Court notes that if the Agreement permitted, in any respect, a downward adjustment to the monthly percentage used to calculate the Marketing/Reservations Fee, Plaintiff's current submissions might be insufficient to establish the 7.5% monthly fee rate as a matter of law. In that scenario, a reasonable jury could find a lower rate favorable to Defendants and adverse to the Plaintiff. Such a finding would give rise to a genuine dispute of material fact which, if resolved in Defendants' favor, as Rule 56 requires, would preclude summary judgment for Plaintiff on the issue of the applicable monthly fee rate. However, the Agreement unambiguously contemplates only upward adjustments to the rate, not reductions.

percentage used to calculate the Plaintiff's damages. Therefore, the Court concludes, as a matter of law, that the applicable monthly fee percentage under the Agreement is 7.5%.

### 3) Treble Damages

Plaintiff argues that, because of Defendants' willful infringement, its actual damages should be trebled as a deterrent. Plaintiff contends that an award of actual damages is inadequate because it "contains no deterrent component" which is necessary to disincentivize infringers. In Plaintiff's view, awarding actual damages alone would incentivize infringers to "take their chances and infringe" because "the cost of infringement was simply paying the franchise fee that would otherwise be due." *Id.*

Under the Lanham Act, when assessing damages "the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). The Act gives courts considerable discretion to analyze the circumstances of the case and assign damages accordingly. Courts have found that a plaintiff's damages may be trebled when there is willful infringement. *See Travelodge Hotels, Inc. v. Elkins Motel Assocs., Inc.*, No. CIV. 03-799 (WHW), 2005 WL 2656676, at *12 (D.N.J. Oct. 18, 2005) (holding that damages be trebled when defendant hotel did not remove signage containing plaintiff's trademark despite numerous notices of the violation following a termination of the defendant's franchise agreement); *Ramada Worldwide Inc. v. Sayo, Inc.*, No. CIV.A. 05-5506, 2007 WL 7754199, at *12 (D.N.J. July 10, 2007) (holding that treble damages was justified when defendant hotel continued to display plaintiff's marks for eleven months after termination of the license agreement); *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 341 (6th Cir. 2010) (holding that the district court did not abuse its discretion by awarding treble damages when the defendant hotel continued to use plaintiff's trademarks following the

termination of a license agreement).

However, the Third Circuit has made clear that while willfulness is a factor in determining enhanced damages, it is not necessarily sufficient on its own to establish an award of enhanced damages. *Kars 4 Kids*, 8 F.4ᵗʰ at 225 n.22 ("While 'willful infringement is central,' to the decision whether to enhance damages, we have not held that willful infringement is alone sufficient to support an enhanced award.") (citation omitted). The *Kars 4 Kids* Court also cautioned that since deterrence is not a compensatory justification for damages, it cannot serve as the basis for an enhanced award. *Id.* The Court explained that the Lanham Act remains remedial, despite it being designed to deter wrongful conduct, only as long as the purpose of the damage calculation is to compensate a plaintiff for its actual injuries. *Id.* (relying on *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988)). The Court may use its discretion to increase the damages award in situations where an award of actual damages undercompensates the plaintiff in some way. 15 U.S.C. § 1117(a). In most cases though, an award of actual damages will be sufficient to compensate the plaintiff for its injuries. *See Kars 4 Kids.*, 8 F.4th at 224; *See also Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015) ("Generally, actual, proven profits will adequately compensate the plaintiff.)

Here, Plaintiff's justification for requesting treble damages rests on willful infringement and deterrent effect. This is not sufficient. Plaintiff's argument that infringers would be incentivized to infringe if the only consequence was to pay their preexisting contractual obligations ignores the fact that under the Lanham Act the cost of infringement is not constrained to paying actual damages. If a defendant is found liable for infringement it may be required to 1) disgorge all of the profits it gained from its wrongful conduct, 2) compensate the plaintiff for their actual damages, and 3) foot the bill for the suit. In exceptional circumstances, which the Court will

discuss in more detail below, the infringer may be required to cover the costs of plaintiff's attorney fees. Plaintiff fails to take into account the cumulative nature of the available monetary damages under the Lanham Act, and thus the deterrent effect those cumulative damages impose.

Therefore, while the Court agrees that Plaintiff is entitled to its actual compensatory damages, the Court declines to award enhanced damages.

### iii.  Costs of the Action

The Lanham Act permits a successful plaintiff to recover the costs of the action. 15 U.S.C. § 1117(a). Plaintiff sets forth the costs incurred in connection with this suit as follows:

1. District Court filing fee: $402
2. Pro Hac Vice fee: $150
3. Service of Process fee: $109.60
4. US Marshal fee: $594.65

Plaintiff has incurred a total of $1,256.25[33] in costs associated with this action. Already having determined that Defendants are liable for all asserted claims, the Court awards Plaintiff its costs of this action in the amount of $1,256.25.

### iv.  Damages Calculation

Once entitlement to monetary relief is established, a court may award damages even when the amount is not susceptible to a precise calculation. *Elkins Motel*, 2005 WL 2656676, at *11; *Eastman Kodak Co. of New York v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927). Such damages are not rendered uncertain because they are not calculated with absolute exactness. *Eastman Kodak*, 273 U.S. at 379. A reasonable basis of computation, even if approximate, is sufficient. *Id.*

A plaintiff bears the initial burden of proving the defendant's sales, after which the burden

---

[33] Plaintiff's Motion provides that the costs incurred in this action equal $1,106.25. Plaintiff then lists the costs enumerated above. The Court notes that the sum in Plaintiff's Brief is mathematically incorrect and that the sum of the fees outlined in Plaintiff's brief equals $1,256.25.

shifts to the defendant to show deductible costs or that profits are not attributable to the infringement. *Sabinsa Corp*, 2011 WL 3236096 at *3. Circumstantial evidence of the amount of damages may be competent to "sufficiently show the extent of damages, as a matter of just and reasonable inference." *Id*. But still, the plaintiff must prove damages to a "reasonable certainty," and the Court need not accept an estimation where more reliable evidence could have been, but was not, produced. *Banjo Buddies*, 399 F.3d at 178.

Additionally, the Court is mindful that "a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." *Eastman Kodak Co.*, 273 U.S. at 379.

Here, the Court has determined that Plaintiff is entitled to monetary relief under § 1117(a). Therefore, Plaintiff must establish Defendants' sales. 15 U.S.C. § 1117(a).  Plaintiff asserts that precise calculations are impossible because Defendants refused to participate in discovery. As an approximation, Plaintiff relied on the Subject Property's reported revenue from the most recent year for which Plaintiff had data—January through December 2020. Plaintiff's calculations show that the Subject Property's average monthly gross room revenue for 2020 was $54,212.13. Plaintiff calculated Defendants' overall gross room revenue for the infringing timeframe by multiplying that figure by forty, which represents the alleged infringing timeframe. Plaintiff contends that Defendants estimated overall gross room revenue during the infringing timeframe was $1,301,105.52.

Plaintiff calculated its damages by applying the 7.5% monthly fee to the estimated monthly revenue ($54,212.13), resulting in an estimated monthly fee of $4065.95. Plaintiff then multiplied the estimated monthly fee by forty months to determine that its total damages equal $97,582.80.

Defendants argue that Plaintiff's damages calculation is based on double hearsay, which the Court cannot consider in a motion for summary judgment. Specifically, Defendants argue that the Declaration of Stuart M. Kreindler is hearsay, and that Mr. Kreindler based his damages calculation on "records maintained by Plaintiff...the Plaintiff's records are hearsay and Mr. Kreindler's Declaration is hearsay; both are out of court statements submitted for the truth of the assertions contained therein." (ECF No. 111 at p. 7.) Thus, Defendants argue, the Court cannot properly adopt Plaintiff's damages calculation by relying on double hearsay.

Defendants fundamentally misunderstand both Rule 56 and the Federal Rules of Evidence as they relate to hearsay. Rule 56 explicitly addresses when a court may consider a Declaration at the summary judgment stage. It says, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In this case, Mr. Kreindler's Declaration 1) states that it is made on his personal knowledge, 2) sets out facts that explain how Plaintiff arrived at its damages calculations, and 3) establishes that Mr. Kreindler is Assistant General Counsel for Choice Hotels International and his job duties include reviewing corporate records and ensuring compliance with franchise agreements, rendering him competent to testify about the subject matter of the Declaration. Thus, for the purposes of summary judgment, the Declaration is admissible.

As to Mr. Kreindler's reliance on Plaintiff's records, which are hearsay, Defendants fail to acknowledge that hearsay is admissible if it falls within a proscribed exception. *See* Fed. R. Evid. 803. One such exception permits the admission of business records if the records were made in the course of a regularly conducted activity, near the time of the activity, as part of a regular business practice, and the opposition has not shown that the record lacks trustworthiness. *See* Fed. R. Evid.

803(6). The only potential element of the business records exception that is not met on its face in this case is whether Defendants have shown that the record lacks trustworthiness.

Defendants argue that that Plaintiff's records do not explicitly reference the Defendants, implying that the record cannot conclusively be attributed to the Subject Property. However, upon inspection of the records, the Court notes that the upper lefthand corner of the records states: Property ID: NJ059 Bellmawr. (ECF No. 108-14 at p.7.[34]) The Franchise Agreement, on the top right hand of the first page indicates NJ059R. (ECF No. 108-16 at p. 2.) The Court is satisfied that the Property ID on the records identifies the Subject Property. Therefore, the Court finds that the Plaintiff's records fall within the business records exception and are admissible evidence. Since the Court has determined that both alleged levels of hearsay are independently admissible, the Court may consider the Declaration for the purposes of summary judgment.

Defendants further argue that the Court should reject Plaintiff's damages estimates because even though Defendants refused to comply with discovery demands, Plaintiff did not compel discovery under Rule 37(a). As such, Defendants argue, Plaintiff should not benefit from Defendants' failure to respond when they could have employed procedural mechanisms to force a response.

The record, however, reflects Defendants' repeated noncompliance with discovery obligations and court orders (as well as multiple withdrawals by Defendants' counsel based on Defendants' failure to cooperate with its own counsel), and a persistent refusal to participate meaningfully in the litigation. Defendants cannot now invoke the consequences of their own failure to cooperate in the litigation to complain that damages "cannot be measured with the same exactness and precision as would otherwise be possible." *Eastman Kodak*, 273 U.S. at 379.

---

[34] Declaration of Stuart M. Kreindler, Esq., Oracle business records (ECF No. 108-14 at p. 7.)

Therefore, the Court finds that the Plaintiff has proven Defendants' sales with reasonable certainty. Defendants have not submitted any evidence of deductible costs, nor have they provided evidence that any profits were not attributable to their infringement. Therefore, the Court accepts Plaintiff's profits calculations and finds that Plaintiff is entitled to Defendants' profits in the amount of $1,301,105.52.

Further, as the Court has accepted Plaintiff's damages calculation, and determined that the monthly fees must be calculated at a rate of 7.5%, the Court finds that Plaintiff is entitled to its damages in the amount of $97,582.80.

### c.  Exceptional Case Designation

The Lanham Act permits an award of attorney's fees to the prevailing party in "exceptional cases." *See* 15 U.S.C. § 1117(a). To determine whether a case is exceptional, the Court applies a two-step inquiry. *Green v. Fornario*, 486 F.3d 100, 103 (3d Cir. 2007). First, the Court considers whether the defendant engaged in culpable conduct such as bad faith, fraud, malice, or knowing infringement. *Id.* (citing *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d Cir.1991). In making that determination, the Court is permitted to consider not only the conduct that relates to the Lanham Act violation, but also "the way the losing party handled himself during the litigation." *Id.* (citing *SecuraComm*, 224 F.3d at 282). If culpable conduct is shown, the Court then considers whether the circumstances render the case sufficiently exceptional to justify a fee award. *Id.*

Here, the Court has already found that Defendants' infringement was willful. Defendants were notified on three separate occasions prior to the filing of this lawsuit to cease and desist use of Plaintiff's marks and made no attempt to comply. After suit was filed, Defendants ignored the Court Ordered preliminary injunction, which compelled Plaintiff to move for contempt to obtain

24

a seizure order, which was executed by the U.S. Marshals. Even then, Defendants persisted in advertising online using images containing the Plaintiff's marks. Not until March 27, 2025—more than four years after termination of the Franchise Agreement—was the Court able to say definitively that Defendants were no longer infringing. This conduct squarely qualifies as willful infringement and bad faith. This is precisely the type of culpable conduct that constitutes the exceptional case designation.

Defendants' conduct throughout litigation does nothing to help their cause. They failed to appear until after Plaintiff moved for default judgment and then appeared the very next day. Even then they participated only intermittently and obstructively. They ignored discovery obligations, violated court orders, caused repeated extensions, and forced multiple motions to withdraw by their own counsel for non-communication and non-payment. Discovery was extended to accommodate Defendants' new counsel, which was ultimately pointless given that Defendant never responded to discovery requests, produced discovery documents, issued any discovery requests, or even appeared for depositions. Nothing about Defendants' conduct in the course of this litigation gives the Court a reason to believe they litigated in good faith. Their disregard for this Court's orders and for the litigation process has been consistent and deliberate.

In sum, the Defendants knowingly and willfully infringed on Plaintiff's trademarks while blatantly disregarding the Court's Orders and engaging in bad faith litigation tactics that have needlessly prolonged what should have been a straightforward case. Defendants' conduct has been egregious in every aspect. Under the circumstances, it is clear that this case falls within the parameters of the "exceptional case." Therefore, the Court awards Plaintiff its reasonable attorney's fees.

## V.     CONCLUSION

For all of the reasons set forth above, Plaintiff's Motion for Summary Judgment (ECF No. 108) is GRANTED.

Dated:   November 25, 2025

KAREN M. WILLIAMS
United States District Judge